UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERIE L. McKENZIE,

    Plaintiff,                                    CIVIL ACTION NO. 13-11272

   v.

                                          DISTRICT JUDGE GEORGE CARAM STEEH
                                          MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work.

**II.**    **REPORT**

    **A.**    **Introduction and Procedural History**

Plaintiff filed applications for Social Security Disability Income Benefits (DIB) and Supplemental Security Income (SSI) benefits on July 26, 2010, alleging that she had been disabled and unable to work since May 9, 2006, at age 30, due to scoliosis, asthma, left knee pain and generalized anxiety. Benefits were denied by the Social Security Administration

(SSA). A requested de novo hearing was held on August 25, 2011, before Administrative Law Judge (ALJ) Kyle Andeer. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a restricted range of light work providing a sit-stand option in a clean air environment. The Administrative Law Judge further restricted claimant to simple, low stress jobs involving only occasional interaction with the public, co-workers and supervisors. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Claimant was 35 years old at the time of the administrative hearing. She had been graduated from high school, and had been employed as a cashier, retail manager and scale operator during the relevant past (TR 153). Plaintiff alleged that she was disabled and unable to return to work due to severe neck, back and left knee pain (TR 40, 42). Claimant stated that she used "Icy-Hot" or "Biofreeze" to relieve the pain, but she denied using any prescription pain medication (TR 50). Plaintiff explained that she needed assistance when cooking and doing the laundry (TR 51). She estimated that she could sit for 15 minutes at a time, stand 10 to 15 minutes, and walk about one-half of a normal city block before needing to rest (TR 52-53). Plaintiff added that she had difficulty with her memory, and that she likes to keep to herself (TR 55).

A Vocational Expert, Louis Brooks, classified Plaintiff's past work as sedentary to medium semi-skilled activity (TR 59). The witness testified that, if claimant were capable of light work, there were numerous unskilled bench assembly, visual inspection and packaging jobs that she could perform with minimal vocational adjustment. These low-stress jobs provided a sit-stand option that did not require the climbing of ladders, ropes, or scaffolds (TR 59-60). In addition, the ALJ asked the vocational expert to assume that this person must avoid even moderate exposure to wetness, humidity, or airborne pollutants, and that the work required only occasional decision-making (TR 60). The ALJ also restricted this person to a work environment that had only occasional changes in the work setting, and only occasional interaction with the public, coworkers, and supervisors (TR 60).

**B.     ALJ Findings**

The Administrative Law Judge found that Plaintiff was impaired as a result of scoliosis, asthma, left knee pain and generalized anxiety, but that she did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's joint pain prevented her from working at jobs requiring her to sit or stand for prolonged periods. She was unable to climb ladders, ropes or scaffolds. Given her breathing difficulties, the ALJ limited her to jobs where she would not be exposed to high humidity levels or airborne pollutants. The ALJ further restricted her to low stress jobs that had only occasional interaction with the public, co-workers and supervisors. Nevertheless, the Law Judge found that Plaintiff retained the

residual functional capacity to perform a significant number of light jobs, within those limitations, as identified by the Vocational Expert (TR 20-28).

### C. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that she remains capable of performing a limited range of light work activity. She also argues that the ALJ improperly evaluated her credibility, and did not take into consideration all of her functional limitations. Defendant counters that the claimant retains the residual functional capacity for a reduced range of light work because the objective clinical evidence of record did not confirm the disabling nature of her joint pain or mental difficulties.

D.     **Discussion and Analysis**

I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retains the residual functional capacity for a restricted range of light work  Contrary to Plaintiff's assertion, the medical evidence does not support her allegations of totally disabling joint pain or generalized anxiety.

The medical record contains little objective medical basis for crediting Plaintiff's complaints of disabling symptoms related to her scoliosis or left knee pain. Claimant has never been hospitalized, nor has she received aggressive treatment for either condition. Treatment notes from December 2006, reflect that Plaintiff complained of back pain "off and on", and she was prescribed medication (TR 264-265). At the hearing, however, claimant testified that she was not taking any medications, although she had tried Advil a couple of times with no relief (TR 50). During a psychiatric assessment in April 2009, Plaintiff complained of a history of back pain, but she was able to walk without difficulty (TR 321).

Dr. Leonidas Rojas, an examining physician, reported that the claimant did not have significant difficulty standing up from a seated position, and she could get on and off the examination table easily (TR 362). An inspection of Plaintiff's extremities revealed relatively normal findings (TR 362). She had mild tenderness in her left knee without swelling or deformities (TR 362). Range of left leg motion was only slightly restricted. Claimant walked with a minimal limp on her left side, but she did not need a cane or other assistive device. Dr. Rojas opined that Plaintiff was not disabled, but could return to work provided that she could sit and stand as needed. The doctor added that claimant had to avoid prolonged standing, walking, kneeling, squatting, frequent bending, heavy lifting, and could not be exposed to extreme temperatures (TR 362). While Dr. Rojas believed that Plaintiff had significant limitations in her ability to work, his opinion did not indicate that Plaintiff was entirely precluded from working.

The record does not demonstrate that Plaintiff's anxiety was disabling. She received treatment for this disorder at the Adult Well Being Services clinic. A psychiatric evaluation in April 2009, noted that Plaintiff was depressed, but she remained coherent without psychotic or manic symptoms (TR 359). Claimant's memory, concentration, ability to calculate, exercise judgment, think abstractly, and demonstrate insight were intact (TR 359). Dr. Yorasi, the examining psychiatrist, gave Plaintiff a GAF score of 55, indicating only moderate symptoms (TR 359). After claimant began taking medication for the anxiety in June 2009, she reported that her symptoms immediately improved (TR 355). By February

2010, Plaintiff stopped attending therapy, and her case was eventually closed when she missed several appointments (TR 343). When claimant returned to the psychiatric clinic for another assessment in August 2010, a mental status examination was unremarkable (TR 344).

The ALJ also relied on the November 2010, report prepared by Dr. Basavi Baddigam, who evaluated Plaintiff's mental impairments in connection with her application for disability benefits. Dr. Baddigam's report failed to show that claimant's emotional difficulties were as severe as alleged. On examination, Plaintiff was clear, coherent, and goal directed (TR 370). She denied having any obsessions, compulsions, or suicidal/homicidal ideation. Plaintiff was able to repeat four out of four digits forward, identify large cities and make basic calculations (TR 370). She could recognize similarities and differences and think abstractly Dr. Baddigam explained that Plaintiff did not have any memory problems, and she was able to understand, remember, and follow directions (TR 371). Dr. Baddigam gave Plaintiff a GAF score of 55, which is consistent with the earlier scores she received. The doctor's report and opinion is substantial evidence in support of the ALJ's finding that Plaintiff did not have a disabling mental impairment.

The medical record contains no evidence of significant side-effects from pain medications[1]. Significantly, no doctor declared her to be totally and permanently disabled.

---

[1] Plaintiff alleged that her medications were ineffective and caused side effects (Plaintiff's Brief in Support of Summary Judgment at pp 1-2). During her evaluation with Dr. Rojas, however claimant reported that her anti-depressants were fairly effective in controlling her symptoms (TR 361). She also denied experiencing any side effects when she was later evaluated by Dr. Baddigam (TR 369). In February 2010, she complained that her medication caused shakiness, but she denied any other side effects (TR 345-346). In January 2011, Plaintiff again denied any side effects from her medication (TR 376). Thus,

Despite allegations that she suffered from severe pain radiating throughout her body, the claimant was able to perform a wide range of robust activities of daily living. During an August 2010. psychological assessment, Plaintiff acknowledged that she did not have any difficulty independently performing her activities of daily living (TR 313, 315). See Warner v. Commissioner, 375 F.3d 387, 392 (6th Cir. 2004) ("the [ALJ] justifiably considered [the plaintiff's] ability to conduct activities of daily life activities in the face of his claim of disabling pain"). The ALJ reasonably accounted for claimant's periodic joint pain by restricting her to slow paced light work that did not require frequent crouching, crawling, stooping, climbing or balancing.

Contrary to Plaintiff's assertion, the issue is not whether the ALJ properly labeled her impairments as severe or non-severe, but whether the Law Judge adequately included all functional limitations from those impairments into his residual functional capacity (RFC) evaluation. In the instant case, the claimant has failed to point to any medical opinion, or other evidence, demonstrating additional work-related limitations caused by those conditions allegedly ignored by the Law Judge. Considering the totality of the medical record, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from her joint pain and emotional difficulties were not fully credible.

---

the record reflects that when Plaintiff had side effects, her doctors managed her prescription levels and modified them accordingly. There is no record that her side effects persisted afterwards.

8

It is the rare case, the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There is evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fits in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with her significant impairments[2], the Vocational Expert testified that there were numerous

---

[2] The Administrative Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her joint pain, anxiety and depression. The ALJ reasonably determined that claimant's on-going joint discomfort limited her to simple, unskilled, routine type jobs that did not require frequent bodily movements(TR 12-19). The Sixth Circuit has held that hypothetical questions to experts are not required to included lists of claimant's medical conditions. Webb v. Commissioner, 368 F.3d 629, 633 (6th Cir. 2004). Under these circumstances, the ALJ's hypothetical question accurately portrayed Plaintiff's impairments.

unskilled bench assembly, packaging and visual inspection jobs that she could still perform with minimal vocational adjustment. These low-stress jobs provided a sit-stand option, did not require the climbing of ladders, ropes or scaffolding, and were performed in clean low humidity environments. There was only occasional interaction with the public, co-workers and supervisors. (TR 60-61). Given the objective clinical findings of the examining physicians of record, substantial evidence exists on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th

Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the <u>Local Rules of the United States District Court for the Eastern District of Michigan</u>, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

        s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
        CHARLES E. BINDER
Dated: August 19, 2014        United States Magistrate Judge